1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8  QUINCY A. SIMS,                              1:11cv0931 DLB PC

9                            Plaintiff,

10         v.                                   ORDER DISMISSING COMPLAINT
                                                WITH LEAVE TO FILE AMENDED
11  WEGMAN, et al.,                             COMPLAINT WITHIN THIRTY DAYS

12                            Defendants.

13  _____/

14

15                          **Screening Order**

16  **I.    Background**

17         Plaintiff Quincy A. Sims ("Plaintiff") is a prisoner in the custody of the California

18  Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in

19  forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed his

20  complaint on June 9, 2011.

21         The Court is required to screen complaints brought by prisoners seeking relief against a

22  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

23  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

24  legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

25  that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

26  § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

27  paid, the court shall dismiss the case at any time if the court determines that . . . the action or

28

1

1  appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. §

2  1915(e)(2)(B)(ii).

3      A complaint must contain "a short and plain statement of the claim showing that the

4  pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

5  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

6  conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing

7  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual

8  matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*,

9  550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*

10 **II.    Summary Of Complaint**

11     Plaintiff is incarcerated at Kern Valley State Prison ("KVSP") in Delano, California,

12 where the events giving rise to this action occurred.  Plaintiff names Warden M. D. Biter,

13 Community Resource Manager C. Wegman and Appeals Coordinator B. DaVeiga as Defendants.

14     Plaintiff alleges that on April 13, 2011, he petitioned KVSP for an accommodation in his

15 diet.  He requested that he be given a Kosher Foods diet to accommodate his religious guidelines

16 as a "registered" Muslim in the Nation of Islam.

17     Plaintiff alleges that he presented Defendants with documentation to support his claim

18 but he was repeatedly denied.  Plaintiff alleges that Defendant DaVeiga rejected the claim

19 numerous times for "unsubstantial" reasons, in violation of The Religious Land Use and

20 Institutionalized Persons Act of 2000 ("RLUIPA") and the First, Eighth and Fourteenth

21 Amendments.

22     Plaintiff incorporates the underlying request and inmate appeal documents and attaches

23 them to his complaint.  Plaintiff requested a change from a Vegetarian Diet to a Kosher Diet

24 because, as a Muslim, he was entitled to eat the same foods as Orthodox Jewish inmates.  He

25 requested Kosher meals because Muslim and Jewish foods were similar.

26     On April 12, 2011, Defendant Wegman denied his request, explaining that as a "self-

27 identifying and practicing Muslim," Plaintiff may qualify for a special religious diet.  However,

28 the Jewish Kosher Diet Program is only available to Jewish inmates and Plaintiff therefore did

2

1  not qualify.  Defendant Wegman explained that in his C-File, Plaintiff stated that he was

2  "Christian/Muslim" and therefore "clearly [did] not meet the criteria for the Jewish Kosher Diet

3  Program under CCR § 3054.2(a) as [he is] not Jewish."  Defendant Wegman informed Plaintiff

4  that his religious diet needs are met under either a Vegetarian Diet or Meat Alternative Diet, both

5  of which are available for inmates who qualify.  Defendant Wegman instructed Plaintiff to

6  contact the designated chaplain for his faith and apply for the program.

7  On April 18, 2011, April 26, 2011, and May 3, 2011, Defendant DeVeiga rejected

8  Plaintiff's appeal for various procedural reasons.

9  **III.**   **Analysis**

10  A.   <u>Defendant Biter</u>

11  Defendant Biter is the Warden at KVSP.  Although Plaintiff names him as a Defendant,

12  he does not allege any facts to link Defendant Biter to the alleged constitutional violation.

13  The term "supervisory liability," loosely and commonly used by both courts and litigants

14  alike, is a misnomer.  *Iqbal*, 129 S.Ct. at 1949.  "Government officials may not be held liable for

15  the unconstitutional conduct of their subordinates under a theory of respondeat superior."  *Id*. at

16  1948.  Rather, each government official, regardless of his or her title, is only liable for his or her

17  own misconduct.

18  When the named defendant holds a supervisory position, the causal link between the

19  defendant and the claimed constitutional violation must be specifically alleged.  *See Fayle v.*

20  *Stapley*, 607 F.2d 858, 862 (9th Cir.1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir.1978).

21  To state a claim for relief under section 1983 for supervisory liability, Plaintiff must allege some

22  facts indicating that the defendant either: personally participated in the alleged deprivation of

23  constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or

24  "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights'

25  and is 'the moving force of the constitutional violation.'"  *Hansen v. Black*, 885 F.2d 642, 646

26  (9th Cir.1989) (internal citations omitted); *Taylor*, 880 F.2d at 1045.

27  Plaintiff alleges no facts to demonstrate that Warden Biter personally deprived Plaintiff of

28  his constitutional rights, knew of constitutional violations and failed to act, or promulgated a

3

1  policy that violated Plaintiff's constitutional rights.  He has therefore failed to state a claim

2  against Defendant Biter.

3        Plaintiff will be granted leave to amend this claim.

4        B.    <u>First Amendment</u>

5        "The right to exercise religious practices and beliefs does not terminate at the prison door.

6  The free exercise right, however, is necessarily limited by the fact of incarceration, and may be

7  curtailed in order to achieve legitimate correctional goals or to maintain prison security."

8  *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir.1987) (citing *O'Lone v. Shabazz*, 482 U.S. 342

9  (1987) ); *see Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  Only beliefs which are both sincerely

10  held and rooted in religious beliefs trigger the Free Exercise Clause. *Shakur v. Schriro*, 514 F.3d

11  878, 884-885 (9th Cir.2008) (citing *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir.1994) ); *Callahan*

12  *v. Woods*, 658 F.2d 679, 683 (9th Cir.1981) ).  Under this standard, "when a prison regulation

13  impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to

14  legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

15        First, "there must be a valid, rational connection between the prison regulation and the

16  legitimate government interest put forward to justify it," and "the governmental objective must

17  itself be a legitimate and neutral one." *Id*.  A second consideration is "whether there are

18  alternative means of exercising the right that remain open to prison inmates." *Id*. at 90 (internal

19  quotations and citation omitted).  A third consideration is "the impact accommodation of the

20  asserted right will have on guards and other inmates, and on the allocation of prison resources

21  generally." *Id*.  "Finally, the absence of ready alternatives is evidence of the reasonableness of a

22  prison regulation." *Id*.

23        Plaintiff fails to state a claim for violation of the Free Exercise Clause because he does

24  not allege facts that indicate that he was denied the ability to practice his faith.  Plaintiff requests

25  a Kosher diet, but fails to demonstrate why he requires the Jewish Kosher diet for his religious

26  beliefs.  Plaintiff merely asserts in his complaint that his request was supported by "the Nation of

27  Islam Guidelines on How to Eat to Live."  Complaint, at 3.  In his attached Appeal Form,

28  Plaintiff states that he is instructed to "eat the best" and that the Muslim and Jewish Kosher diets

4

are similar.  He fails to demonstrate why his current diet, or another available religious diet, was insufficient to meet his religious dietary needs.

As it is possible that Plaintiff could state a claim for relief, he will be given leave to amend this claim.

C.    RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling government interest; and

(2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc–1.  RLUIPA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under *Turner*." *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir.2008) (citing *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir.2005)).  The Supreme Court has noted "RLUIPA ... protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).  RLUIPA defines religious exercise to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A); *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir.2004).

Plaintiff has again failed to allege that the practice of his religion was substantially burdened.  As it is possible that Plaintiff could state a claim for relief, he will be given leave to amend this claim.

D.    Fourteenth Amendment- Equal Protection

"The Equal Protection Clause ... is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432,

5

439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  A prisoner is entitled "to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Shakur*, 514 F.3d at 891 (quoting *Cruz v. Beto*, 405 U.S. 319, 321-322 (1972) (per curiam)).  To state a claim, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups.  *Cruz*, 405 U.S. at 321-322; *Shakur*, 514 F.3d at 891; *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir.2003); *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir.2001).

Plaintiff makes no such allegations here.  As it is possible that Plaintiff could state a claim for relief, he will be given leave to amend this claim.

E.     Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted).  In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  *E.g., Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); *Thomas v. Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010); *Foster v. Runnels*, 554 F.3d 807, 812-14 (9th Cir. 2009); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff fails to state a claim under the Eighth Amendment.  An alleged denial of religious exercise in the form of a rejected request for certain food is not a denial of "life's necessities" and does not present a "substantial risk of serious harm" to Plaintiff.  Plaintiff will not be given leave to amend this claim.

1

2

3

4          F.      Fourteenth Amendment- Due Process

5          Plaintiff alleges a violation of the Due Process Clause of the Fourteenth Amendment. The

6   Ninth Circuit has found that:

7          [t]o establish a violation of substantive due process ..., a plaintiff is ordinarily required to
           prove that a challenged government action was clearly arbitrary and unreasonable, having
8          no substantial relation to the public health, safety, morals, or general welfare. Where a
           particular amendment provides an explicit textual source of constitutional protection
9          against a particular sort of government behavior, that Amendment, not the more
           generalized notion of substantive due process, must be the guide for analyzing a plaintiff's
10         claims.

11  *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir.1996) (citations, internal quotations, and brackets

12  omitted); *see County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

13         In this case, the First Amendment and the Equal Protection Clause of the Fourteenth

14  Amendment "provides [the] explicit textual source of constitutional protection ...." *Patel*, 103

15  F.3d at 874.  Therefore, the First Amendment and the Equal Protection Clause, rather than the

16  Due Process Clause, of the Fourteenth Amendment governs Plaintiff's constitutional claims.

17  Plaintiff will not be given leave to amend this claim.

18  **IV.   Conclusion And Order**

19         Plaintiff's complaint is dismissed for failure to state a claim against any Defendants.  The

20  Court will provide Plaintiff with an opportunity to file an amended complaint curing the

21  deficiencies identified by the Court in this order.  *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th

22  Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his

23  amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot"

24  complaints).

25         If Plaintiff decides to amend, Plaintiff's amended complaint should be brief, Fed. R. Civ.

26  P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's

27  constitutional or other federal rights.  *Iqbal*, 129 S. Ct. at 1949.   Although accepted as true, the

28

                                                  7

1   "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . .

2   ." *Twombly*, 550 U.S. at 555.

3        Finally, Plaintiff is advised that an amended complaint supersedes the original complaint,

4   *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567

5   (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded

6   pleading," L. R. 220.  Plaintiff is warned that "[a]ll causes of action alleged in an original

7   complaint which are not alleged in an amended complaint are waived."  *King*, 814 F.2d at 567

8   (citing to *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981)); *accord Forsyth*,

9   114 F.3d at 1474.

10        Accordingly, based on the foregoing, it is HEREBY ORDERED that:

11      1.    The Clerk's Office shall send Plaintiff a complaint form;

12      2.    Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an

13          amended complaint within **thirty (30) days** from the date of service of this order;

14          and

15      3.    If Plaintiff fails to comply with this order, the Court will dismiss this action for

16          failure to obey a court order and failure to state a claim.

17      IT IS SO ORDERED.

18   **Dated:**    **December 19, 2011**        **/s/ Dennis L. Beck**

19                             UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28